UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DWAYNE DAVIS,

                    Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

                    Defendants.

_____/

Case No. 1:23-cv-1109

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.62.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

## I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan.  The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan in 2017 and 2018. Plaintiff sues MDOC Director Heidi E. Washington, Warden L. Parish, Former Warden Thomas Mackie, Deputy Warden Tim Ball, Deputy Warden James Schieber, Deputy Warden Eric Smith, Resident Unit Manager Kelvin Smiley, Assistant Resident Unit Supervisor L. Weaver, Classification Director A. Haskey, Assistant Resident Unit Supervisor Wendy Brinkley, Hearing Investigator Unknown Goodspeed, Grievance Coordinator T. Bassett, Quarter Master Unknown Gauthier, Quarter Master A. Hensley, Librarian Unknown Bomer, Lieutenant T. Mackay, Lieutenant Thad A. Saur, Lieutenant Unknown O'Brien, Sergeant Unknown Clifford, Sergeant Unknown Mitchell, Sergeant Daniel Porter, Sergeant Unknown Taylor, Corrections Officer Unknown Saylor, Corrections Officer Zakarj Iverson, Corrections Officer Unknown Marrow, Corrections Officer Unknown Hoffman, Corrections Officer Alex Mackay, Corrections Officer Unknown Freeman, Corrections Officer Unknown Gainer, Corrections Officer Unknown Turner, Corrections Officer W. Janicki, and Sergeant J. Stone. Plaintiff names all Defendants in their personal capacities.

4

Plaintiff initially presented at least some of these claims in a complaint dated June 11, 2019, in *Davis v. Mackie et al.*, No. 1:19-cv-469 (W.D. Mich.).  That case was brought against Defendants Thomas Mackie, A. Haskey, T. Bassett, Kelvin Smiley, Unknown Gauthier, Unknown Bomer, Larry Weaver, Wendy Brinkley, A. Mackey, Unknown Taylor, Unknown Saylor, Unknown Gainer, Unknown Hoffman, Unknown Freeman, Unknown Turner, W. Janicki, and Unknown MacKay.  The case was dismissed by the Court without prejudice for failure to comply with the Court's order to file an amended complaint on November 16, 2019. *Id.*, (ECF Nos. 9, 10).  Plaintiff sought reconsideration, which was denied by the Court on January 27, 2020.  *Id.*, (ECF Nos. 11, 13).

More than three years later, on March 15, 2023, Plaintiff filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which was denied on March 27, 2023.  *Id.*, *(*ECF No. 16, 17).  Plaintiff subsequently challenged the Court's denial of his motion for relief from judgment by way of a motion to alter or amend judgment under Rule 59(e), which was denied on May 3, 2023, and a notice of appeal, which was dismissed for want of prosecution on January 2, 2024.  *Id.*, (ECF Nos. 18, 19, 21, 24).

In the instant complaint, Plaintiff alleges that on January 17, 2017, he submitted a proposal for a Black History Month presentation to Defendant Mackie, which was granted.  The presentation was to be held on February 27, 2017.  On February 5, 2017, Plaintiff was researching for his presentation and gave Defendant Bomer materials for copying.  When Plaintiff arrived to pick up the copies, Defendant

Bomer asked if they were for a legal action, and Plaintiff replied no, that he was researching for his Black History program. Plaintiff then took his copy and returned to his housing unit. (ECF No. 1, PageID.12–13.)

Shortly thereafter, Defendant Bomer told Plaintiff he needed to return the materials she had copied for him. Plaintiff argued that he had paid $5.88 for the copies, and they now belonged to him. Defendant Freeman then gave Plaintiff a direct order to return the copies, and Plaintiff complied. Plaintiff stated that he intended to write a grievance. Later that evening, Defendant Bomer gave Plaintiff a class III misconduct for lying to an employee. (*Id.*, PageID.13-14.) Plaintiff received a hearing on the misconduct, during which it was noted that he had not received a copy of the misconduct. However, Defendant Brinkley nonetheless found Plaintiff guilty of the misconduct. Defendant Hoffman, who was present, said that it did not matter if Plaintiff's copy was still attached to all the other carbon copies and had not been given to him. (*Id.,* PageID.14–16.) Plaintiff received five days on top lock and fifteen days loss of privileges, so that he could not participate in the Black History Program. (*Id.*, PageID.16.) Plaintiff stated that he planned to file a grievance on Defendants Hoffman and Brinkley. (*Id.*)

On February 14, 2017, Plaintiff asked female Corrections Officer Sission for assistance, but was interrupted by Defendant Hoffman, who told Plaintiff that he could not speak to Sission. Plaintiff stated that he could seek help from any unit officer, but Defendant Hoffman said that he was giving Plaintiff a direct order to go to his room. Plaintiff complied, but stated that he planned to file a grievance. (*Id.*)

On February 24, 2017, Plaintiff asked Mrs. K. Holso about the Black History Program, which had been scheduled for February 27, 2017.  Mrs. Holso stated that it had been canceled due to her schedule being changed by Defendant Mackie, and that no other dates had been selected in order to reschedule the event.  (*Id.*, PageID.17.) On March 1, 2017, Defendant Hoffman took Plaintiff's cellmate's face cloth and bath towel out of their cell during a shakedown and wrote Plaintiff a false misconduct for having "extra quartermaster." (*Id.*)  Plaintiff's cellmate, Brandon Tillis, went to the officer's station and asked Defendant Hoffman about his property and Defendants Hoffman and Saylor told him to put in a quartermaster request for a replacement. (*Id.*)  Inmate Tillis asked what they planned to do with his face cloth and towel and Defendants Hoffman and Saylor stated, "Your bunkie Davis El is going to get this ticket because he shouldn't wrote [sic] those grievances on [Hoffman]." (*Id.*)  They also told inmate Tillis to tell Plaintiff that he would never get his Black History Program. (*Id.*)

Plaintiff was later called to the officer's station to be reviewed on a misconduct report written by Defendant Hoffman.  Defendant Freeman then interrupted and gave Plaintiff a direct order to go to his cell.  Plaintiff complied by backing up slowly. Defendant Freeman then told Plaintiff to return and to allow himself to be cuffed and taken to segregation.  Plaintiff was placed in segregation for eight days and was never given a hearing on the misconducts written by Defendants Hoffman and Freeman. Nor did Plaintiff receive a misconduct hearing on the misconduct written by Defendant Saylor while he was in segregation on March 7, 2017.  (*Id.*, PageID.18.)

On March 7, 2017, Defendant MacKay visited Plaintiff and asked if he had been reviewed on the misconduct written by Defendant Freeman.  (*Id.*)  Plaintiff said no, and Defendant MacKay left the area.  (*Id.*, PageID.19.)  Plaintiff later received a false class II misconduct from Defendant Saylor and was reviewed on this misconduct by Defendants Saur and Clifford.  (*Id.*)  Plaintiff was released from segregation on March 8, 2017, but was not allowed to return to 7-unit.  Plaintiff also lost his job as a porter.  (*Id.*)

Plaintiff states that upon release from segregation, he was given a broken ID card and later received a misconduct from Defendant Gainer for having a broken card.  Plaintiff stated that he would file a grievance and Defendant Gainer ordered Plaintiff to leave the area.  Defendant Taylor reviewed the misconduct and told Plaintiff that if he did not sign off on a $5.00 disbursement, he would make sure Plaintiff got fourteen days sanctions instead of seven.  (*Id.*, PageID.20.)

On March 16 or 17, 2017, Plaintiff spoke with Ms. Holso about the Black History Program and she said that he could have it on March 27, 2017, with a limit of fifty people, and made Plaintiff copies of the callout list, marking all speakers in orange highlighter and indicating which prisoners had been transferred or were on sanctions.  (*Id.*, PageID.21.)  On March 26, 2017, Defendant Gainer seized Plaintiff's Black History paperwork while Plaintiff was retrieving a program from his room for another prisoner.  (*Id.*)  Plaintiff went to the officers' station and saw Defendants Gainer, Marrow, and Iverson passing his Black History materials back and forth, and Defendant MacKay soon arrived as well.  Plaintiff asked to have his paperwork

returned and after some back and forth, Defendant Gainer had Plaintiff sent to segregation.  (*Id.*, PageID.21–24.)  Plaintiff received a false threatening behavior misconduct from Defendant Gainer, which was supported by false statements written by Defendants Iverson and Marrow.  (*Id.*, PageID.24-25.)  Plaintiff alleges that when he was reviewed on the misconduct, Inspector Spencely told him that he would not have a Black History program at ECF. (*Id.*, PageID.26.)

Plaintiff was found guilty of the misconduct on April 4, 2017.  (*Id.*)  Plaintiff filed a request for rehearing and affidavits of support to Defendants Ball, Goodspeed, and Mackie, and filed grievances against Defendant Bassett and other officials.  (*Id.*, PageID.27–28.)  Plaintiff wrote additional grievances against Defendant Mackie regarding the misconduct hearing process.  (*Id.*, PageID.28-29.)  Plaintiff also complained to Defendant Washington but received no response.  (*Id.*)  On October 19, 2017, Plaintiff received a misconduct ticket from Defendant Bomer in retaliation for Plaintiff's use of the grievance procedure.  (*Id.*, PageID.29.)

On November 5, 2017, Plaintiff asked Defendant Gauthier to measure his feet for shoes, but his request for properly fitting shoes was denied.  Plaintiff filed a grievance on Defendant Gauthier on November 8, 2017.  (*Id.*)  Plaintiff submitted a health care request to have his feet measured on November 30, 2017.  Plaintiff's request was denied by Health Care Services on December 1, 2017, and December 5, 2017.  (*Id.*, PageID.30.)

Plaintiff states that he stopped going to chow hall on second shift to avoid being harassed for his use of the grievance procedure by Defendants Hoffman, MacKay, and Stone, as well as other corrections officers.  Plaintiff states that Defendant Hoffman was subsequently assigned to his housing unit for the sole purpose of retaliating against Plaintiff.  (*Id.*, PageID.31.)  On December 10, 2017, Defendant Hoffman entered Plaintiff's cell and began to destroy his property, including erasing Plaintiff's legal files off his typewriter.  Defendant Hoffman then told Plaintiff that he was going to get him for writing grievances on him, and that he had a false misconduct charge coming.  Plaintiff then received a false misconduct ticket from Defendant Hoffman, so he filed a grievance.  (*Id.*, PageID.31.)  Plaintiff was found guilty of misconduct and his appeal was denied.  (*Id.*, PageID.32.)

Plaintiff states that on December 10, 2017, he kited mental health after being threatened by Defendant Hoffman and Officer Bennit.  (*Id.*)  On January 12, 2018, Defendants Hoffman and MacKay harassed him and ordered him to submit to a shakedown.  Defendant Hoffman then told Defendant MacKay that he had written Plaintiff a ticket in order to prevent Plaintiff from going to level II or becoming a block rep.  Defendant MacKay then put both hands inside of Plaintiff's pants and grabbed his buttocks.  Defendant Hoffman then ordered Plaintiff to leave. (*Id.*, PageID.33.) Plaintiff states that Defendant Mitchell observed the incident and refused to help Plaintiff.  Plaintiff filed grievances on Defendants Hoffman, MacKay, and Mitchell. (*Id.*, PageID.34.)  Plaintiff wrote to Defendant Ball seeking an investigation, to no avail. (*Id.*)

10

On January 14, 2018, Plaintiff was denied the ability to work as a unit porter by Defendant Turner because he was on loss of privileges.  Defendant Turner falsified a class II misconduct report on Plaintiff for being out of place because he had gone down the cell to ask Officer R. Boerema if he could work while on sanctions. (*Id.*, PageID.36.)  Plaintiff states that Defendant Weaver improperly found Plaintiff guilty.  Plaintiff filed grievances on Defendants Turner and Weaver.  (*Id.*)

Plaintiff states that on January 22, 2018, he gave Defendant Weaver documents to mail out for an administrative appeal.  Defendant Weaver failed to mail them and Plaintiff asked about the situation on February 4, 2018.  Defendant Weaver responded by writing him a misconduct for being out of place.  (*Id.*, PageID.37.)

On February 23, 2018, Plaintiff was denied the ability to attend a religious meeting by Defendant Janicki.  Plaintiff indicated that he planned to file a grievance and Defendant Janicki wrote a class III misconduct on him for violating a posted rule. (*Id.*, PageID.38.)  On February 27, 2018, Plaintiff submitted questions concerning policy to Defendant Smiley, who stated that he would have answers for Plaintiff by March 9, 2018.  Plaintiff never received a response. (*Id.*, PageID.39.)  Plaintiff filed a grievance on Defendant Smiley.  (*Id.*)

Plaintiff was moved from 2-unit to 3-unit on March 16, 2018, and submitted many kites asking why he had been moved.  The move resulted in the loss of Plaintiff's job and the denial of a security reduction from level IV to level II.  Plaintiff was transferred to the Earnest C. Brooks Correctional Facility (LRF) on April 10, 2018, in retaliation for his use of the grievance procedure. (*Id.* at PageID.39-40.)

11

Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's claims are barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 42 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff's complaint is untimely.  He asserts claims arising between January 17, 2017, and April 10, 2018.  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, his claims accrued as of 2018.  However, he did not sign the instant complaint until October 10, 2023, well past Michigan's three-year limit.  (ECF No. 1, PageID.42.)  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* Mich. Comp. Laws § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

However, as noted above, Plaintiff did file a previous lawsuit addressing most of the claims asserted in this complaint.  That complaint was dismissed without prejudice on November 16, 2019, and reconsideration was denied by the Court on January 27, 2020.  *Davis v. Mackie et al.*, No. 1:19-cv-469, (ECF Nos. 9, 10, 11, 13).  "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice."  *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003) (citing *Yeo v. State Farm Fire & Cas. Ins. Co.*, 618 N.W.2d 916, 916 (Mich. Ct. App. 2000)).  In addition, the statute of limitations is tolled for the period during which a plaintiff's available state

14

administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

Plaintiff asserts that he filed a grievance against Defendant Haskey on April 4, 2018. This is the last grievance filed by Plaintiff prior to his transfer from ECF. (ECF No. 1, PageID.40.) Michigan Department of Corrections Policy Directive 03.02.130 states that a step I grievance is to be responded to within fifteen days. MDOC Policy Directive 03.02.130 ¶ FF. A prisoner may file a step II appeal within ten days of the step I response, and the step II response is due fifteen days thereafter. *Id.* ¶¶ JJ, KK. A prisoner then has ten days to file a step III appeal, which is to be responded to within sixty days. *Id.* ¶¶ NN, OO. The total time for the process from the date that the step I grievance is filed is one-hundred and ten (110) days. Therefore, in this case, the statute of limitations would have begun running on Plaintiff's last asserted claim as of July 23, 2018.

As noted above, the statute of limitations for civil rights actions is three years or 1095 days. At the time that Plaintiff signed his complaint in *Davis v. Mackie et al.*, No. 1:19-cv-469, on June 11, 2019, 323 days had elapsed, leaving Plaintiff with 772 days to file a new action. That case was closed on November 26, 2019, and Plaintiff's motion for reconsideration was denied on January 27, 2020. At this point, pursuant to Federal Rule of Appellate Procedure 4(a), Plaintiff had 30 days to appeal the denial of his motion for reconsideration, or until February 26, 2020. At this point, the statute of limitations began to run again. Adding 772 days, or 110 weeks and 2 days, the statute of limitations on Plaintiff's claims would have run on April 8, 2022.

15

Plaintiff's motions for relief from judgment and to alter or amend judgment and his appeal in *Davis v. Mackie et al.*, No. 1:19-cv-469, filed in March and April of 2023, could not toll the statute of limitations, because it had already run. Therefore, Plaintiff's complaint in this case, which was filed in October of 2023, is barred by the statute of limitations.

A claim barred by the statute of limitations is subject to dismissal for failure to state a claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (holding that if, on the face of a complaint, the allegations show that relief is barred by an affirmative defense (lack of exhaustion), the complaint is subject to dismissal for failure to state a claim (citing *Jones*, 549 U.S. at 215)); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (holding that when a complaint on its face is barred by the statute of limitations, it fails to state a claim). Therefore, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly

dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 17, 2024                              /s/ Phillip J. Green
                                                      PHILLIP J. GREEN
                                                      United States Magistrate Judge